```
                              UNITED STATES DISTRICT COURT
                              SOUTHERN DISTRICT OF FLORIDA

                              CASE NO. 08-80108-CIV-HURLEY
                              MAGISTRATE JUDGE P. A. WHITE
```

STUART DUANE AURICH,             :

    Plaintiff,                  :

v.                               :           REPORT OF
                                                                     MAGISTRATE JUDGE
PALM BEACH COUNTY DEPUTY         :
SHERIFF HARRY THOMAS, et al.,
                                 :
    Defendants.

## I    INTRODUCTION

Plaintiff Stuart Duane Aurich, now confined at the Saginaw Correctional Facility in Freeland, Michigan, filed a _pro se_ civil rights complaint pursuant to 42 U.S.C. §1983, alleging that Palm Beach County Deputy Sheriff Harry Thomas used excessive force, and denied him medical care, during an arrest on February 28, 2006. Upon entry of a Preliminary Report and an Order of partial dismissal (DE#s 5, 10), the Palm Beach County Sheriff's Office, which also was a named defendant, was dismissed, and the case remained pending only on the brutality and medical claims against Deputy Thomas.

**This Cause is before the Court upon a Motion for Summary Judgment filed by Plaintiff Aurich (DE#46)** with numerous attachments, in opposition to which defendant Thomas filed a Response (DE#49) with supporting exhibits: Exhibit A, consisting of an unexecuted copy of Thomas' Affidavit (at DE#49-1),[1] and Exhibit B, consisting of Thomas' Objections and Answers to plaintiff's interrogatories (at DE#49-2). Plaintiff Aurich filed an "opposition" to defendant Thomas' Affidavit (DE#53), and a "Memorandum" which is in effect a Reply to Thomas' Response opposing Aurich's summary judgment motion. (DE#54). Thomas' Response does not incorporate a cross motion, nor did he file a separate motion for summary judgment.

---

       [1]    Thomas' executed affidavit is filed at DE#52-1.

## II    DISCUSSION

In the Preliminary Report, Aurich's complaint was summarized as alleging that on February 28, 2006, Thomas engaged in excessive and unnecessary force upon his arrest when, knowing that Aurich was scheduled for reconstructive shoulder surgery, he dragged him out of his apartment, smashed his shoulder with his knee, and refused to allow him to have his medical records and medication.

### A.    Excessive Force

A claim that a law enforcement officer used excessive force in the course of an arrest, an investigatory stop, or any other seizure of a free citizen is to be analyzed under the Fourth Amendment and its "reasonableness" standard. Graham v. Connor, 490 U.S. 386 (1989); Vinyard v. Wilson, 311 F.3d 1340, 1346-47 (11 Cir. 2002); Lee v. Ferraro, 284 F.3d 1188, 1197 (11 Cir. 2002); Ortega v. Schram, 922 F.2d 684, 694 (11 Cir. 1991). Such an analysis requires a court to balance "the nature and quality of the intrusion on the individual's fourth amendment interests against the importance of the government interest alleged to justify the intrusion." Graham, supra, quoting United States v. Place, 462 U.S. 696 (1983). The factors a Court considers when balancing the necessity for an application of force against an arrestee's constitutional rights include: (1) the severity of the crime at issue; (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight; Graham, supra, 490 U.S. at 396; Vinyard, supra, 311 F.3d at 1347; Lee, supra, 284 F.3d at 1197; Ortega, supra, 922 F.2d at 695. In determining whether force applied was "reasonable" under the circumstances (i.e., proportional to the need for its use), the Court must examine: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; and (3) the extent of the injury inflicted upon the individual to whom the force was applied. Vinyard, at 1347; Lee at 1998. Although the test applied by the Eleventh Circuit previously

included a subjective prong, examining whether the force was applies maliciously, see e.g. Leslie v. Ingraham, 786 F.2d 1533, 1536 (11 Cir. 1986), that factor has been eliminated from the analysis by Graham and other cases establishing that the excessive force inquiry should be completely objective, thereby excluding consideration of the Officer's intentions. Lee, supra, 284 F.3d at 1198 n.7. Thus, "Reasonableness" for purposes of such an analysis is judged according to an objective standard under the totality of the circumstances, without regard to the officers' underlying intent. Graham, supra at 389.

If the force applied was reasonable under the circumstances and not excessive, the police officer has not violated any clearly established constitutional right, and is entitled to summary judgment based upon qualified immunity. Moore v. Gwinnett County, 967 F.2d 1495, 1498 (11 Cir. 1992), quoting, Leslie v. Ingram, 786 F.2d 1533, 1536 (11 Cir. 1986). The defense of qualified immunity insulates governmental officials from personal liability for actions taken pursuant to their discretionary authority. See: Saucier v. Katz, 533 U.S. 194 (2001); Harlow v. Fitzgerald, 457 U.S. 800 (1982); Flores v. Satz , 137 F.3d 1275 (11 Cir. 1998); Foy v. Holston, 94 F.3d 1528 (11 Cir. 1996).

In this case, the excessive force allegations by Aurich in his sworn complaint, and the statements by defendant Thomas in his summary judgment response and Affidavit are diametrically opposed.

Specifically, Aurich alleges that prior to his 2/28/06 arrest he had suffered shoulder trauma, and was scheduled to undergo surgery on 3/6/06. Aurich states that he did not resist arrest, and that the arresting officer, Deputy Sheriff Thomas, knew he had the medical condition before effecting the arrest. He alleges that "D/S Harry Thomas drug me out of my apartment by my arms," causing pain that was "so intense I could feel the inside of my shoulder ripping and grinding until I passed out. Aurich alleges that after he "came to" Thomas "smashed in my shoulder with his knee causing me to pass out again." Aurich alleges that in addition to the pain that

3

Thomas' actions caused, he was "passing blood in the county jail from all the abuse." He states that his medical records prove that his "condition was worsened because of this treatment."

In his Response to plaintiff Aurich's summary judgment motion, the defendant Thomas describes the incident in question as "a routine warrant arrest that took place without resistance from Mr. Aurich." According to Thomas' executed Affidavit (DE#52-1), he and other Palm Beach Sheriff's Deputies, including a K-9 officer, went to 4961 Bayberry Drive, #23, in West Palm Beach, Florida, to execute an active arrest warrant issued for Stuart D. Aurich by the State of Michigan, for robbery with a firearm. The officers contacted Aurich at the front door of the residence, and he was placed in handcuffs, without resistance. Thomas states that "at no time during Mr. Aurich's arrest did I punch, kick or strike Mr. Aurich." He also states that "I did not 'stomp' my foot or knee into Mr. Aurich's back, nor did I 'smash' into his left shoulder as he alleges." Thomas further states that "I did not 'drag' Mr. Aurich out of the apartment after being placed in handcuffs," and he adds that "[o]nce restrained, Mr. Aurich walked out of the apartment without any resistance."

The defendant Thomas states argues in his Response opposing plaintiff's summary judgment motion, that "there are genuine issues of material fact in dispute as to whether force which was excessive was used on Mr. Aurich...". Thomas argues, therefore, that Aurich's motion for summary judgment should be denied.[2] The defendant's argument is correct. It is readily apparent, based on the record which is before the Court, that the existence of genuine issues of material fact, regarding the nature and extent of force that was

---

[2] Thomas also argues that to the extent that Aurich had a pre-existing shoulder condition of which he was unaware, even if it were assumed *arguendo* that he [Thomas] somehow aggravated that injury during the process of applying handcuffs to Aurich, it would not lead to the conclusion that the force used was excessive, or that he [Thomas] might not be entitled to qualified immunity. (Response, DE#49, p.4). This argument/observation, however, is not dispositive of the use of force claim at this juncture, as the material facts are in dispute regarding the nature and amount of force which was applied.

used, and the necessity for using it, precludes summary disposition of the excessive use of force claim in this case. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986); and Fed.R.Civ.P. 56(c).

### B. Denial of Medical Care

It is undisputed that denial of medical care to an arrestee/detainee or pretrial detainee can form the basis for a claim against an arresting officer or other officer detaining an individual. See e.g. Boone v. Spurgess, 385 F.3d 923, 933-34 (6 Cir. 2004). The Court in Boone noted that in the landmark Fourth Amendment case of Graham v. Connor, supra, at 389-90, the excessive force claim was partially based on the officers' refusal to provide medical care to a handcuffed suspect suffering from a diabetic attack. The Court in Boone also noted that the Fourth Amendment's guarantee of "reasonable seizures" was applied by the Seventh Circuit to a claim that police failed to provide adequate medical care to a suspect in their custody. Boone, supra, 385 F.3d at 933, citing Estate of Phillps v. City of Milwaukee, 123 F.3d 586, 595-96 (7 Cir. 1997). In doing so, however, the Court in Boone acknowledged that some courts, including the Sixth Circuit in the past had previously applied the Fourteenth and not the Fourth Amendment to such claims.

While it is clear that there is a general constitutional right to medical care under the Cruel and Unusual Punishment Clause of the Eighth Amendment for convicted prisoners, and under the substantive due process clause for pre-trial detainees under the Fourteenth Amendment who are housed detention facilities awaiting adjudication, see Lancaster v. Monroe County, Ala., 116 F.3d 1419, 1425, n. 6 (11 Cir. 1997), it has recently been discussed in the case of Ponce de Leon v. Jackson Memorial Hospital, No. 09-22809-Civ., 2009 WL 3818429, at *3-4 (S.D.Fla., Nov. 13, 2009) that the Eleventh Circuit has never been squarely faced with the question whether a court should apply the "deliberate indifference" standard of the Fourteenth Amendment, or the "reasonableness" standard of the Fourth Amendment to a claim of denial of medical care by arresting officers.

5

While the Fourth Amendment applies to seizures, and the handcuffing and placement of an individual into a police car, see Graham v. Connor, supra, the precise point at which Fourth Amendment protections end, and Fourteenth Amendment protections begin is unsettled in this Circuit. See Hicks v. Moore, 422 F.3d 1246, 1253 n. 7 (11 Cir.2005). In a recent Eleventh Circuit case decided in February 2009, Fennell v. Gilstrap, 559 F.3d 1212 (11 Cir.2009), which involved use of force, the Court applied the Fourteenth Amendment, and not the Fourth, to a claim by an individual who had been arrested and transported in a police car to the jail, where the alleged excessive force occurred in the "pat-down room' shortly after his arrival there. More recently, the District Court for the Southern District of Florida in the opinion in Ponce de Leon noted that Eleventh Circuit in Thomas v. Town of Davie, 847 F.2d 771 (11 Cir. 1998) had applied the Fourteenth Amendment to a claim of denial of medical care by police to an arrestee, who was labeled a "pretrial detainee" although the claim arose while the plaintiff was in police custody prior to actual detention. The Court in Ponce de Leon concluded, therefore, that in the absence of other Eleventh Circuit precedent, Thomas was controlling.

As noted, supra, in this case, the plaintiff Aurich has alleged in his complaint that before Deputy Thomas applied force which caused him great pain, Thomas knew he had the pre-existing shoulder condition. Aurich's sworn complaint also includes his allegation that Deputy Thomas "refused to allow me to have my medical records, x-rays, and pain medications." This allegation was the basis for the claim of denial of medical care, gleaned from the complaint upon its initial review. (See Preliminary Report).

Aurich's summary judgment motion (at DE#46, p.17) provides additional details. According to him, when he followed officers' verbal orders to get down on the floor, he told them he was unarmed, and that he had a broken shoulder for which his surgery was scheduled. He states that he asked that his medical records and pain medications which he were on the kitchen table be taken with

him to jail, but Deputy Thomas, the arresting officer refused. According to Aurich, Deputy Thomas said "I will not be needing those records and prescribed pain medications because I will be taken care of at the county jail."

Aurich in his motion (DE#46, p.20) further indicates that after he arrived at the Palm Beach County Jail the medical staff "only documented the damages caused at the time of the arrest;" and states "I was denied all of my prescribed pain medications."

In contrast to Aurich's statement in his sworn complaint that Deputy Thomas knew he had a pre-existing shoulder condition, Thomas in his own Affidavit states "I was not aware of Mr. Aurich's alleged left shoulder injury at the time of the arrest, nor was I aware that Mr. Aurich had a scheduled reconstructive surgery to the left shoulder." (DE#52-1). Defendant Thomas in his Affidavit does not address plaintiff Aurich's statement that he [Thomas] refused to allow him to take his medical records, x-rays, and pain medications with him to the jail. In his Response to Aurich's motion, Thomas notes Aurich's additional statement [from Aurich's motion] that he [Thomas] "informed him that he would not be needing those because he will be taken care of at the jail." (Response, at DE#49, p.3, citing Motion for summary judgment at p.16).

The defendant Thomas argues in his Response that "there are genuine issues of material fact in dispute as to...whether the Defendant Thomas was aware of Mr. Aurich's serious medical condition but intentionally disregarded it, causing the plaintiff more harm...". He argues, therefore, that on the medical claim the plaintiff is not entitled to summary judgment in his favor. (Response, DE#49, p.4).

It is not appropriate for the Court, at summary judgment, to speculate on whether the alleged refusal by Thomas to allow plaintiff's medical information and medication to be transported with him caused Aurich an injury of constitutional dimension through delay of medical care, or access to medication for pain in

his shoulder. Summary judgment is not a procedure for resolving a swearing contest. <u>Chandler v. Baird</u>, 926 F.2d 1057 (11 Cir. 1991). In this case, resolution of the issues and facts that are in dispute, based upon the parties' opposing and conflicting Affidavits/statements would require the Court to step outside its assigned role, and invade the province of the jury. As the Supreme Court stated in its opinion in <u>Anderson v. Liberty Lobby, Inc.</u>, <u>supra</u>, "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to believed, and all justifiable inferences are to be drawn in his favor." <u>Anderson</u>, <u>supra</u>, 477 U.S. at 255 (citing <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144, 158-59 (1970)).

It is disputed in the plaintiff's and defendants' opposing sworn documents [Aurich's sworn complaint, and Thomas' Affidavit] whether Thomas was aware of the plaintiff's medical condition. While the plaintiff Aurich does not allege, and there anything in the record to suggest that the defendant Deputy Sheriff Thomas had any responsibility for or control over the plaintiff's medical care once he was transported to and detained inside the county jail, the sworn complaint includes Aurich's allegations that not only did Deputy Thomas deny him his medical records and x-rays, but that he also denied him access to his pain medication. If, as alleged, Deputy Thomas was aware of plaintiff's medical condition, and pain associated with it, and/or if Thomas was responsible for exacerbating that injury and increasing plaintiff's level of pain to the point that the plaintiff passed out from the pain -- as the plaintiff Aurich has alleged, but Thomas then denied plaintiff Aurich access to his pain medication, that alone could form the basis for a medical claim against Thomas. This is because obvious pain can be an indicator of a serious medical need. See <u>McElligott v. Foley</u>, 182 F.3d 1248, 1257 (11 Cir.1999) (finding that an inmate's complaints of abdominal pain should have signaled a serious medical need); <u>Brown v. Hughes</u>, 894 F.2d 1533, 1538 (11 Cir.1990) (painful broken foot can be serious medical need, and an

8

official's deliberate delay on the order of hours in providing care for a serious and painful broken foot is sufficient to state a constitutional claim). See also Aldridge v. Montgomery, 753 F.2d 970, 972-73 (11 Cir. 1985) (2½ hour delay in treatment for a bleeding cut under the eye held actionable); Hughes v. Noble, 295 F.2d 495 (5 Cir. 1961) (13 hour delay for broken and dislocated cervical vertebrae).

In sum, it is apparent, here, with regard to the claim of denial of access to medical care, that existing genuine issues of material fact preclude summary judgment in the plaintiff's favor, on the basis of the plaintiff's motion and the record that is before the Court. On his medical claim, the plaintiff's motion for summary judgment should therefore be denied.

### III    CONCLUSION

It is therefore recommended that: 1) the plaintiff's motion for summary judgment (DE#46) be DENIED as to all claims; and 2) the case remain pending against the defendant Palm Beach County Deputy Sheriff Harry Thomas, on the claims of use of excessive force on arrest, and denial of medical care or access thereto.

Objections to this report may be filed with the District Judge within fourteen days of receipt of a copy of the report.

Dated: January 22nd, 2010.

_____
UNITED STATES MAGISTRATE JUDGE


cc:   Stuart Duane Aurich, Pro Se
      No. 547683
      Saginaw Correctional Facility
      9625 Pierce Road
      Freeland, MI 48623

```
Adriana M. Jisa, Esquire
Bruce Wa. Jolly, Esquire
Purdy, Jolly, Giuffreda & Barranco, P.A.
2455 East Sunrise Blvd., Suite 1216
Fort Lauderdale, FL 33304
```