UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-80108-CIV-HURLEY

STUART DUANE AURICH,
       Plaintiff,

vs.

DEPUTY SHERIFF HARRY THOMAS,
PALM BEACH SHERIFF'S OFFICE,
       Defendant.
_____/

ORDER DENYING in PART & GRANTING in PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Stuart Duane Aurich ("Aurich") sues defendant Palm Beach County Deputy Sheriff

Harry Thomas ("Officer Thomas"), bringing claim under 42 U.S.C. § 1983 for unconstitutionally

excessive force during the course of an arrest (Count 1) and delayed medical care (Count 2).

I.  Procedural History

In earlier proceedings, the court denied Aurich's motion for summary judgment, finding

disputed issues of material fact on the issues of whether Officer Thomas used excessive force in

effecting Aurich's arrest, and whether Officer Thomas unreasonably denied Aurich access to timely

medical care for a serious medical condition. [DE# 62].

Officer Thomas later filed a separate motion for summary judgment on ground that he did

not use excessive force in effecting Aurich's arrest as a matter of law, or in the alternative, that he

is entitled to qualified immunity [DE# 69]. On September 3, 2010, the court accepted Officer

Thomas' motion for filing, re-opened the time for both parties to file summary judgment motions,

and established briefing deadlines on the motion and cross motion, if any. [DE# 73]. Aurich has

since filed his response in opposition to Officer Thomas' motion [DE# 82], without cross motion,

and Officer Thomas has filed his reply [DE# 84].

In evaluating Officer Thomas' motion, the court views the evidence and factual inferences in the light most favorable to Aurich, the the non-moving party, and avoids all credibility judgments. *Behrens v Pelletier,* 516 U.S. 299, 116 S. Ct. 834, 133 L.Ed.2d 773 (1996); *Mize v Jefferson City Bd of Education,* 93 F.3d 739 (11th Cir. 1996).

Applying this standard here, the court reaffirms its earlier finding that Aurich alleges sufficient facts to create a genuine issue of material fact on the question of whether Officer Thomas used a reasonable amount of force when arresting him. The court further finds that Officer Thomas' conduct, as alleged by Aurich, facially violates the Fourth Amendment with obvious clarity and violates clearly established law in view of the Eleventh Circuit Court of Appeals decisions in *Smith v Mattox,* 127 F.3d 1416 911th Cir. 1997)(per curiam) and *Wells v Cramer*, 262 Fed. Appx. 184, 2008 WL 11088 (11th Cir. 2008)(unpub), such that Officer Thomas is not entitled to qualified immunity on the excessive force claim at this stage of the litigation.

Finally, with regard to Aurich's Fourteenth Amendment due process claim based on delayed or denied medical care, the court concludes that Aurich fails to establish facts showing a deliberate indifference to a serious medical need on the part of Officer Thomas. Accordingly, the court shall grant the motion for summary judgment as to Aurich's delayed/denied medical care claim.

## II. FACTS

There is no genuine issue as to any of the following facts, except as otherwise noted:

On February 6, 2008, at approximately 10:30 p.m., several Palm Beach County Sheriff's Deputies, including a K-9 Officer and Officer Thomas, arrested Aurich at his apartment in West Palm Beach, Florida to execute an active arrest warrant for robbery with a firearm issued for

Aurich by the State of Michigan.

The officers enlisted the assistance of a security guard at the apartment complex  to induce Aurich to open his front door.  After Aurich opened the door,  the security guard stepped aside and the officers entered and placed Aurich under arrest.  According to Officer Thomas, Aurich was promptly placed in handcuffs without resistence, and, once restrained, complied by walking out of the apartment without any resistance [DE# 49-1].  Officer Thomas described it  as a "basic arrest," where Aurich was "compliant" at all times.

Aurich delivers a diametrically opposed account of the arrest.  According to him, the officers charged into his apartment  screaming to get down on the floor.  He says he promptly complied, and, as he was going  down, told the officers that  he had a broken shoulder and was scheduled for reconstructive shoulder surgery.  He also pointed  out a pile of  medical records, prescription pain medicine and a sling on the kitchen table which he had ready to take to the jail. [1]

Officer Thomas told Aurich he would not need his medical papers or medicine because he would be taken care of at the county jail.  Aurich says Officer Thomas then stomped either his foot or knee into his back, grabbed both of his arms and handcuffed them behind his back.  According to Aurich, Officer Thomas then "yanked my whole body by my arms and drug me out of my home

---

[1]

Aurich states he had prepared for his arrest  after his father called earlier that day to advise him that he had directed the police to his home.  In anticipation of their arrival, Aurich gathered his prescribed pain medicine, medical records and sling and placed these items on the kitchen table for the stated purpose of providing the arresting authorities with his medical contact information  and demonstrating that  he was not armed [DE# 46].

Aurich's  father has filed a corroborating affidavit indicating that he was visited by three police officers earlier that day; after learning that  the officers  had a warrant for his son's arrest, he told them where to find him  after receiving assurances that his son would  receive the shoulder surgery as scheduled.  [DE# 46-1].

just like I was a wild animal or something." [DE# 46, p. 17]   At this point Aurich felt something

inside his shoulder ripping, tearing and grinding, which caused  him to  pass out from pain.  When

he regained consciousness,  he was  lying on his back  outside the building with his arms still

handcuffed behind him,  surrounded by several officers with  guns drawn.  He avers that Officer

Thomas then  "smashed in" his left  shoulder, causing Aurich to pass out again.  By the time he

arrived at the Palm Beach County Jail, his shoulder was  red and swollen, and he was passing blood

in his urine and stools.  He complains that a  nurse in the prisoner medical intake unit ultimately  told

him he would not be receiving  his prescribed pain medications or his  anticipated shoulder surgery

because his medical care was now the responsibility of the State of Michigan.[2]

### III. DISCUSSION

### A.  Excessive Force

Aurich's  description of his arrest  must be taken  as true  for purposes of this  summary

judgment proceeding.  Under Aurich's account of the event, despite his consistent compliance and

cooperation, Officer Thomas stomped on his back in the process of handcuffing him, dragged him

out of the apartment by the arms,  and then, after Aurich passed out and regained consciousness,

gratuitously "smashed" in his left vulnerable shoulder as he lay immobilized on the ground, causing

Aurich to pass out again.

If  the court assumes Aurich's  account to be true, Officer  Thomas' conduct, after Aurich

had been subdued and was non-resistant, constitutes actionable excessive force. The officer's alleged

acts of  dragging a compliant Aurich out of the apartment by the arms after  handcuffing him, and

---

[2]Aurich has filed a separate § 1983 claim against the nurse and other members of the
prison medical staff for lack of adequate medical treatment which is also pending in this division.
Case No. 080-80113-CIV-HURLEY.

then "smashing" his injured shoulder after Aurich was handcuffed, supine and  immobilized on the ground, facially violated the Fourth Amendment with obvious clarity.  While the court appreciates the risk of the unknown which confronted the officers when they stormed the apartment to effect Aurich's arrest, and takes no issue with their use of  some force  reasonably necessary to rapidly subdue Aurich and eliminate his access to any weaponry, at some point the force, as alleged by Aurich,  became entirely gratuitous and crossed over the constitutional line.

Once Aurich was subdued, exhibiting complete cooperation toward the officers and the ability to walk under his own power, the officer's  "yanking" his body by the arms and "dragging" it out the door like a "wild animal,"  – a description of the event which the court interprets, in a light most favorable to Aurich, to mean that the officer dragged his torso  by the arms along the ground like a four legged animal incapable of standing erect –  could serve no other purpose but the infliction of gratuitous pain. This is particularly so  where, under Aurich's account, he had already told the officer that he had a significant shoulder injury for which surgery was  scheduled.

Surely once an arrestee is subdued and compliant there would be no justification for then dragging and bouncing him down a flight of stairs by his arms or legs while escorting him to the police cruiser for transport.  Dragging a subdued, compliant, ambulatory arrestee  with a known shoulder vulnerability along the ground during the course of a  police escort is equally unjustifiable as an unreasonable "seizure" of the person offensive to any principled adherence to the Fourth

Amendment guarantees. [3]  Viewed in combination with the gratuitous "smashing" of Aurich's shoulder after he regained consciousness on the ground outside, Officer Thomas' conduct, as alleged by Aurich,  is an obvious violation of the general prohibition against unreasonable force preserved by our Constitution.

Thus,  Aurich's allegations, if true, are sufficient to show that Officer Thomas used unconstitutionally excessive force at these two physical junctures of his arrest.  *See e.g. Jennings v Jones,* 499 F.3d 2 (1st Cir. 2007)(whether police officer applied excessive force when he increased pressure on suspect's ankle several seconds after suspect stopped resisting arrest and stated that pressure already applied was hurting his previously injured ankle was for jury); *Jones v Garcia,* 345 Fed. Appx. 987 (6th Cir. 2009)(unpub)(genuine issue of material fact, regarding whether police officer snatched arrestee from prone to standing solely using arm connected to arrestee's bad shoulder after he warned officers of pre-existing injury, precluded summary judgment on arrestee's Fourth Amendment excessive force claim); *Guite v Wright*, 147 F.3d 747 (8th Cir. 1998)(permitting excessive force claim where despite visible shoulder injury in sling, officer grabbed plaintiff's wrist, pushed him backwards and held him against a door). *See also  Howard v Dickerson*, 34 F.3d 978

---

[3]

The defendant offers the affidavit of Eric Carr, the security guard, in effort to corroborate Officer Thomas' account of the incident.  Carr states that after he stepped aside, he did not see the arrest, although he was initially within earshot and did not hear any exclamations that would leave him to believe that excessive force was involved.  Carr says he then walked down the stairs of the apartment and waited inside his security patrol vehicle, from where  he watched  Aurich leave the apartment in handcuffs, led by the deputies,  without evincing any kind of pain or discomfort. [DE# 69-2] .  It is not clear that Carr was in a position to view any portion of the arrest with any degree of reliability, since he did not witness the physical arrest and was sitting in his patrol car during the escort to the police cruiser.  In any event, for purposes of this summary judgment proceeding, the court is bound to accept the plaintiff's version of the event, without making any credibility judgments or weighing inconsistent  testimony.

(10th Cir 1994)(upholding Fourteenth Amendment claim of deliberate indifference to medical needs where plaintiff told arresting officer that she recently underwent neck surgery and that handcuffing behind the back would aggravate injury). *Cf. Rodriguez v Farrell*, 294 F.3d 1276, 1278 n. 3 (11th Cir. 2002)(officer's alleged discounting of plaintiff's arm injury claim was reasonable where plaintiff did not tell officer about injury until after arrest began; whether Constitution would require crediting the statement if plaintiff told officer about injury before physical part of arrest began left as open question).

There are no new evidentiary developments in the record which alter the court's analysis of this threshold issue in any way. Because the factual allegations, if true, show Officer Thomas violated Aurich's constitutional right to be free of excessive force, the analysis now turns to whether Officer Thomas is entitled to qualified immunity for his actions as a matter of law.

### 1.  QUALIFIED IMMUNITY

Qualified immunity protects public officials from § 1983 liability as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v Fitzgerald*, 457 U.S. 800, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982). To receive qualified immunity, the officer must first show that he acted within his discretionary authority. *Lee v Ferraro*, 284 F.3d 1188 (11th Cir. 2002). It is undisputed in this case that Officer Thomas acted within his discretionary authority.

Once discretionary authority is established, the burden shifts to plaintiff to show that qualified immunity should not apply. *Id.* The Supreme Court has set out a two part test for determining the applicability of qualified immunity: (1) First, taken in the light most favorable to the party, do the facts alleged show the officer's conduct violated a constitutional right? (2) If

so, was the right "clearly established" at the time of the objectionable conduct? *Saucier  v Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L.Ed.2d 272  (2001).

For a  right to be clearly established, the contours of the right must be sufficiently  clear that a reasonable official would understand that what he is doing violates that right.  *Saucier* at 202. A right may be established for qualified immunity purposes in one of three ways: (1) case law with indistinguishable facts clearly establishing the constitutional  right;   (2) a broad statement of principle  within the Constitution, statutes or case law, untied to particularized facts, that clearly establishes the  law applicable in the future to different facts; (3) conduct so egregious that case law is not needed to establish that the conduct cannot be lawful.  *Lewis v City of  West Palm  Beach,* 561 F.3d 1288 (11th Cir. 2009), citing  *Long v Slaton*, 508 F.3d 576 (11th Cir. 2007) and  *Mercado v City of Orlando*, 407 F.3d 1152, 1159 (11th Cir. 2005).

Here, the court finds that Aurich's right to be free of excessive force during arrest was clearly established under the first and third test.  As to similar case law examples clearly establishing the constitutional right to be free from excessive force from the controlling appellate court,  the court is informed by the cases of  *Smith v Mattox*, 127 F.3d 1416 (11th Cir. 1997) and *Wells v Cramer*, 262 Fed. Appx. 184, 2008 WL 110088 (11th Cir.2008)(unpub).

In *Smith,* the arrestee, when confronted by a police officer conducting a drug operation, raised a baseball bat at the officer, but then dropped the bat and fled. When he was later surrounded by the officer and others, he at first pretended to run again but then  "docilely submitted to arrest" upon the officer's request for him to "get down."  Once on the ground,  the arresting officer put his knee on his back to handcuff him and pulled his arm,  causing  him to complain of discomfort. The arrestee then heard the officer grunt before delivering a blow which broke the  arm in several places. The

8

grunt and blow to the arm, coupled with the severity of the injury and the arrestee's lack of resistance, showed at the summary judgment stage that the officer had violated clearly established law.

In *Wells*, a police officer tackled the arrestee following a low speed chase. The officer averred that he used force only in attempt to place the resisting arrestee into handcuffs, and alleged facts showing that he was an immediate threat to safety of others and that he evaded arrest by flight. Wells filed a counter-affidavit indicating that the officers immediately handcuffed him after tackling him, and then proceeded to beat him and "high five" each other while he lay handcuffed on the ground. Wells' declaration that he was handcuffed and no longer resisting arrest when he was beaten created a genuine issue of material fact as to whether the officers used a reasonable amount of force when arresting him, and also showed, at the summary judgment stage, that the arresting officer had violated clearly established law and had facially violated the Fourth Amendment with obvious clarity for purposes of qualified immunity analysis.

So too in this case, Officer Thomas' qualified immunity assertion calls for an evaluation of whether Officer Thomas's actions were objectively reasonable in light of the facts and circumstances confronting him. In making this assessment, the court must consider the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of the officers or others, whether the suspect was actively resisting arrest or attempting to evade arrest by flight. At the same time, the court must view the facts from the "perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight" and must allow "for the fact that police officers are often forced to make split second judgments -- in circumstances that are tense, uncertain, and rapidly evolving –about the amount of force that is necessary in a particular situation." *Graham v*

*Connor*, 490 U.S. 386, 397 (1989); *Lee v Ferraro*, 284 F.3d 1188 (11th Cir. 2002).

Recognizing the severity of the crime for which the arrest warrant had issued – armed robbery – and the corresponding possibility that the arrestee may well be armed and dangerous, the rush into Aurich's home and immediate push to get him down on the ground and handcuffed is well within the realm of the officers' discretionary duties and functions in effecting an arrest.  However, Aurich posed no threat to the officers after he was arrested and secured in handcuffs, so the force the officer used *after* the arrest in dragging him out of the apartment by this arms and smashing in his shoulder was unnecessary and disproportionate under the circumstances, assuming as true, as alleged by Aurich, that: (1) Aurich was not resisting arrest and was compliantly subdued at the time he was dragged out of the apartment by his arms, or at the time of the blow to his shoulder; (2) the sensation of ripping, tearing and grinding in Aurich's shoulder as he was dragged from the apartment; (3) the intermittent loss of consciousness from pain after the handcuffing; and (4) the aggravation of a pre-existing shoulder injury.

At the time of Officer Thomas' action, both existing case law and general Fourth Amendment principles had clearly established that this use of force was excessive in violation of the Constitution.  *Lee v Ferraro*, 284 F.3d 1188 (11th Cir. 2002)(qualified immunity denied to officer who was physically rough with arrestee despite no threat or physical aggression on her part); *Priester v City of Riviera Beach,* 208 F.3d 919 (11th Cir. 2000)(qualified immunity denied officer who ordered a dog attack on a passive suspect).   *See also Jennings v Jones*, 499 F.3d 2 (1st Cir. 2007)(officer acted in obvious violation of general prohibition against unreasonable force and clearly established law where he increased force on ankle after arrestee stopped resisting and warned that he was hurting his previously injured ankle); *Giles v Kearney,* 571 F.3d 318, 327 (3d

10

Cir. 2009)(reversing summary judgment on basis of qualified immunity; assuming arrestee's version of the facts to be true at summary judgment juncture, no reasonable officer could agree that striking and kicking a subdued, non-resisting inmate in the side, with force enough to cause broken rib and collapsed lung was reasonable or necessary under established law). Accordingly, Officer Thomas is not entitled to qualified immunity on Aurich's excessive force claim at this stage of the litigation.

## B. DELAYED MEDICAL CARE

Aurich also contends that Officer Thomas violated his constitutional rights by depriving him of access to his prescription pain medicine and medical records before delivering him to the custody of the Palm Beach County Jail.

Deliberate indifference to serious medical needs of prisoners is viewed as the unnecessary and wanton infliction of pain in violation of the Eighth Amendment and is cognizable under 42 U.S.C. § 1983. *Walker v Butler*, 967 F.2d 176 (5th Cir. 1992). *See also Domino v Tex. Dept of Criminal Justice*, 239 F.3d 752 (5th Cir. 2001). The failure to alleviate a significant risk that a prison official should have perceived, but did not, is insufficient to show deliberate indifference. Rather, the plaintiff must show that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in similar conduct that clearly evinces wanton disregard for a serious medical need. *Id.*

When the plaintiff, like Aurich, is a pretrial detainee, claims of cruel and unusual punishment sound properly in the Fourteenth Amendment right to due process, as opposed to the Eighth Amendment. *Goree v City of Atlanta, Ga.*, 276 Fed. Appx. 919 (11th Cir. 2008)(unpub), citing *Lancaster v Monroe County, Ala.,* 116 F.3d 1419, 1425 n. 6 (11th Cir. 1997). Because the applicable standard is the same under either provision, case law involving prison inmates is applicable to cases

involving arrestees and pretrial detainees. *Id.,* citing *Marsh v Butler County, Ala*., 268 F.3d 1014, 1024 n. 5 (11th Cir. 2001)(*en banc)*.

In order to establish a Fourteenth Amendment violation based on deliberate indifference to medical needs, a pretrial detainee must establish: (1) an "objectively serious deprivation," i.e. a "serious medical need" that left unattended poses a substantial risk of serious harm; (2) a response by the public official that is so inadequate that it constitutes "an unnecessary and wanton infliction of pain," and (3) an attitude of deliberate indifference by illustrating that the public official was aware of the facts form which a substantial risk of serious harm could be inferred and drawing that indifference. *Goree, supra*, citing *Taylor v Adams*, 221 F.3d 1254 (11th Cir. 2000).

A "serious medical need" is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize th need for a doctor's urgent attention. *Monmouth County Correctional Institutional Inmates v Lanzaro,* 834 F.2d 326 (3d Cir. 1987).

"Deliberate indifference" requires proof that the officer knew of the arrestee's need for medial care and either (1) intentionally refused to provide such care; (2) delayed medical care for non-medical reasons, or (3) denied a reasonable request for treatment. *Durmer v O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993). Thus, to prove "deliberate indifference," the plaintiff must show subjective knowledge of the risk of harm, disregard of that risk and conduct that is beyond mere negligence. *Brown v Johnson,* 387 F.3d 1344 (11th Cir. 2004).

Delay in access to medical attention can amount to "deliberate indifference" to a serious medical condition in violation of the Constitution when it is "tantamount to 'unnecessary and wanton infliction of pain,'" such as delay in access to emergency medical needs involving life

threatening conditions, or situations where  it is apparent that delay would detrimentally exacerbate the arrestee's medical problem. *See e.g. Brown v Hughes*, 894 F.2d 1533, 1538 (11th Cir.1990)(per curiam)(delay in medical treatment for serious and painful broken foot was sufficient to state a constitutional claim); *H.C. ex rel. Hewett v Jarrard*, 786 F.2d 1080 (11th Cir. 1986)(superintendent of juvenile detention center held responsible under §1983 for denying medical care to juvenile, where superintendent personally inflicted injury to juvenile's shoulder by throwing him against wall in isolation cell, and then effectively placed medical attention beyond his reach by authorizing and imposing isolation for period well beyond state guidelines);  *Hughes v Noble*, 295 F.2d 495 (5th Cir. 1961)(per curiam) (arrestee stated claim for denial of medical care where after auto accident, arrestee was  jailed for thirteen hours with dislocated and fractured cervical vertebrae without medical attention despite repeated requests for medical assistance).

On the other hand,  delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute a constitutional violation.  *Dickson v Colman*, 569 F.2d 1310 (5th Cir. 1978)(per curiam) (no constitutional violation for 33- day delay in treatment of shoulder injury because of failure to transfer medical records  where inmate had full range of motion despite continuing pain from three year old injury); *Wesson v Oglesby*, 910 F.2d 278 (5th Cir. 1990)(state prisoner's swollen, bleeding wrists from handcuffs that were too tight did not constitute a "serious medical need" such that any minor delay caused by prison officials in delivering inmate to care of medical personnel could be construed as "deliberate indifference.")

In this case, Aurich contends that Officer Thomas was aware of his pre-existing shoulder injury, his scheduled shoulder surgery and the pain associated with his medical condition, yet denied him access to his medical records, x-rays and prescription pain medicine, even after he passed out

from pain twice during course of his arrest.   For purposes of this analysis, the  court assumes that Aurich's pre-existing shoulder injury, for which he was scheduled for surgery,  constitutes a serious medical need.

However, Aurich fails to allege facts demonstrating a "deliberate indifference" to that need on the part of Officer Thomas. He  does not allege that  Officer Thomas delayed transporting him to appropriate medical personnel to assess his current complaints of pain or need for surgery and that such delay exacerbated his injuries. *Cf. Gaudreault v Municipality of Salem*, 923 F.2d 203 (1st Cir 1990)(per curiam) (while hospital records showed bruises and abrasions to forehead, ribs, shoulder, cornea and upper back consistent with allegation that arrestee had been assaulted by police officer, there was nothing record to suggest that ten hour delay in medical treatment exacerbated those injuries).  Instead,  he complains that after Officer Thomas impeded his access to his prescription medicine and medical contact information by refusing to take his medical records and prescription pill bottles to the jail at the time of his arrest.

Aurich fails to demonstrate how Officer Thomas  disregarded a known risk by preventing him from transporting his pain medicine or medical records to jail, or how Officer Thomas otherwise may have contributed to any delay in  treatment or surgery for his pre-existing shoulder injury.  He complains only that Officer Thomas  refused to bring along Aurich's  prescription medicine and medical records which would have served as verification of his medical condition and useful  contact information for the prison medical staff in order to facilitate his  treatment.  This does not rise to the level of "deliberate indifference" to a "serious medical need,"  *Collier v Montgomery*, 569 F.3d 214 (5th Cir. 2009)(police officer did not act with deliberate indifference to arrestee's alleged serious medical condition where arrestee complained of chest pain and officers refused to

14

allow contact with arrestee's own cardiologist, where officer twice attempted to provide medical care which arrestee refused); *Abshure v Prator*, 2010 WL 3278256 (5th Cir. 2010)(unpub)(arresting deputy's action of preventing diabetic from injecting himself was objectively reasonable, where deputy prevented arrestee from injecting himself with unknown substance and prevented him from transporting syringe with him to jail, as deputy had no way to know if syringe contained insulin).

While Aurich complains that impeded access to his medical and prescription medicine records contributed to the delay in an accurate diagnosis and treatment by prison medical authorities after he was delivered to prison officials, he adduces no verifying medical evidence to establish how Officer Thomas' failure to curry his medical records to prison officials contributed to an exacerbation or worsening of his pre-existing medical condition. *Langston v Peters*, 100 F.3d 1235 (7th Cir. 1996)(rejecting allegations of "deliberate indifference" where plaintiff failed to present any evidence of a detrimental effect caused by the one hour delay between time he notified defendant of problem and time defendant notified medical technician).

Because Aurich thus does not present evidence of "deliberate indifference," and has not presented any medical evidence linking his enhanced injuries to the allegedly unconstitutional conduct of Officer Thomas, the court will grant summary judgment on the claim which accuses Officer Thomas of exhibiting deliberate indifference to plaintiff's medical needs.

### IV. Decretal Provisions

Based on the foregoing, it is **ORDERED AND ADJUDGED**:

1. The defendant's motion for summary judgment on grounds of qualified immunity is **DENIED** as to the excessive force claim.

2.  The defendant's motion for summary judgment is **GRANTED** as to the denial/delay in medical care claim.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 5th day of November, 2010.

_____
Daniel T. K. Hurley
United States District Judge

cc. Stuart Duane Aurich, *pro se*
     Jail No. 547683
     Saginaw Correctional Facility
     9625 Pierce Road
     Freeland, MI 48623

     Bruce Wallace Jolly, Esq.

For updated court information, see unofficial website
at www.judgehurley.com